IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TRA FARMS, INC.,

    Plaintiff,

v.                                              CASE NO. 5:12-cv-378-MW/EMT

SYNGENTA SEEDS, INC.,
and VALDOSTA PLANT
COMPANY, INC.,

    Defendants.
_____ /

**ORDER DENYING DEFENDANTS'** *DAUBERT* **MOTION
TO EXCLUDE EXPERT TESTIMONY OF DR. JUAN CARLOS DIAZ-PEREZ**

This case involves breach of warranty claims brought by Plaintiff TRA Farms based upon an allegedly large number of seeds TRA discovered in its Melody variety of "seedless" watermelons. In TRA's Rule 26(a)(2)(B) Disclosure of Expert Witnesses filed June 21, 2013, TRA identified Dr. Juan Carlos Diaz-Perez as an expert who would testify as to the cause of those seeds. ECF No. 29.[1] On February 24, 2014, Defendants moved to exclude Dr. Diaz-Perez's testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). ECF No. 86. After additional responses,[2] this Court, in its discretion, held a *Daubert* hearing on April 7, 2014.[3] For the reasons set forth below, the Defendants' motion is denied.

---

[1] According to TRA's counsel, Dr. Diaz-Perez essentially intends to testify that some act of the Defendants, rather than that of TRA, caused the objectionable seeds. For example, in his report of January 9, 2014, Dr. Diaz-Perez asserts that (1) "low 'Melody' transplant quality . . . probably was a major contributing factor to the presence of large number of seeds;" (2) he "cannot rule out that [Syngenta's] seed was a contributing factor;" and (3) TRA's "growing practices or environmental conditions . . . do not appear to be a major contributing factor."

[2] Defendants' *Daubert* Motion to Exclude Expert Testimony of Plaintiff's Expert Dr. Juan Carlos Diaz-Perez, ECF No. 86, was filed on February 24, 2014 ("*Daubert* Motion"). On March 24,

*Daubert* requires district courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry' assessing whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010). The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. *Id.*

TRA has met its burden. With respect to the first *Hendrix* requirement, qualifications, TRA has demonstrated that Dr. Diaz-Perez is well qualified to testify as an expert in this case. Under the plain language of Federal Rule of Evidence 702, expert status may be based on

---

2014, TRA filed Plaintiff's Response to Defendants' *Daubert* Motion to Exclude Expert Testimony of Dr. Juan Carlos Diaz-Perez. ECF No. 97. On April 1, 2014, Defendants further responded with Defendants' Reply in Support of Their *Daubert* Motion to Exclude Testimony of Plaintiff's Expert Dr. Juan Carlos Diaz-Perez. ECF No. 107.

[3] *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 n.10 (11th Cir. 2007) (indicating that *Daubert* hearings on proffered expert testimony "are not prerequisite" to a district court's determination of admissibility). *See also Feit v. Great-West Life and Annuity Ins. Co.*, 460 F. Supp.2d 632, 637 (D.N.J. 2006) ("the decision whether or not to hold a hearing rests within the sound discretion of the district court").

"knowledge, skill, experience, training, or education." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc).  Here, Dr. Diaz-Perez earned a Bachelor of Science degree in Agriculture and Plant Science in 1983.  He then obtained a Masters degree in Plant Physiology in 1989, and a Ph.D. in Plant Physiology in 1994, both from the University of California, Davis.  Dr. Diaz-Perez's educational background allows him to address matters relating to agronomy and horticulture, including the growth of watermelons, a horticultural crop.

Along with his impressive academic credentials, Dr. Diaz-Perez has additional training and experience relating to the issues in this case.  Dr. Diaz-Perez has been a professor at the University of Georgia for the past 15 years in the Department of Horticulture, with a research interest in vegetable production, and has participated in numerous studies involving the growing of transplants.  Dr. Diaz-Perez is the author of more than 160 publications, some of which relate directly to the issues in this case.[4]  By his education, training, and experience, Dr. Diaz-Perez is well qualified to give opinions in the area of horticulture, including the growth of seedless watermelons.

The second *Hendrix* requirement, methodology, requires more detailed analysis.  As noted, Dr. Diaz-Perez essentially intends to testify that the Defendants, rather than TRA, is the cause of the seeds discovered in TRA's Melody watermelons.  Dr. Diaz-Perez formed his opinion in this case through (1) his personal analysis of TRA's watermelon crop, in which he cut open dozens of watermelons, checked them for seeds, and compared the number of seeds in both the Melody and Distinction varieties; (2) further laboratory studies of additional watermelons taken from TRA farms; (3) review of relevant research; and (4) additional research into factors

---

[4] One of his articles, for example, addresses the impact of reduced irrigation rates on fruit yield and quality in seedless watermelon.

that may have caused the seeds (e.g., reviewing temperature data during the watermelon growing cycle). Dr. Diaz-Perez's methodology was thorough, was based upon both personal observation and prior professional experience, and involved a careful review of the available research as to the cause of excessive seeds in seedless watermelons (which the parties agree is extremely limited).

Along with his extensive investigation, Dr. Diaz-Perez also bases his opinion on certain factual predicates that will be laid for him at trial through other witnesses – most notably, the fact that the Melody watermelons purportedly produced thousands of new watermelons in TRA's fields in the summer of 2012, which, if true, would suggest that the Melody watermelons contained viable seeds.[5] Assuming these factual predicates are grounded in admissible evidence at trial, this is a proper technique for plaintiff's counsel to employ. *See, e.g.*, *Samples v. City of Atlanta*, 916 F.2d 1548, 1551-52 (11th Cir. 1990) (rejecting challenge to expert's opinion elicited through a hypothetical based upon facts in evidence). Accordingly, TRA has met its burden of proving, by a preponderance of evidence, that Dr. Diaz-Perez's proposed testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods," which he has "reliably applied . . . to the facts of the case," thereby satisfying Rule 702.

In rebuttal, Defendants argue that because there is evidence that arguably undermines Dr. Diaz-Perez's opinion, he should be precluded from testifying. For example, Defendants argue that evidence suggests there was no genetic defect in the seeds or transplants because certain individuals claim to have discovered variations in the number of "hard seed coats" in the first set

---

[5] At the *Daubert* hearing on April 7, 2014, counsel for TRA indicated that several witnesses would likely testify to this fact, including Charles McDaniel, Kevin McDaniel, and other TRA farm workers. TRA has further presented evidence in the Record to support this claim.

fruit as compared to the second and third set fruit.[6]  However, the Record contains disputed facts on this issue,[7] and to the extent Dr. Diaz-Perez's opinion relies upon any such disputed fact, his opinion will be subject to cross-examination.  *See Nichols v. City of Mitchell*, 914 F.Supp.2d 1052 (D.S.D. 2012) ("'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'  It is 'only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded.'") (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)).  As *Daubert* precedents make plain, it is not for this Court to assess the validity of Dr. Diaz-Perez's conclusions; rather, our task is to assess the reliability of his methodology, and nothing suggests that his methodology is flawed.  *See Daubert*, 509 U.S. at 595 ("The inquiry envisioned by Rule 702 is . . . a flexible one. . . [and must focus] solely on principles and methodology, not on the conclusions that they generate"); *see also Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999) ("the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable"); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F.Supp.2d 475 (S.D.N.Y. 2013) (while a district court's *Daubert* analysis must be rigorous, "in accordance with the liberal admissibility

---

[6] This fact is significant, according to the defense, because it supports their theory that some environmental factor or growing condition occurred during the development of the first set fruit that was not present during the development of the second set fruit.  This, according to the defense, was the cause of the excessive seeds TRA discovered in certain of its watermelons, rather than some pre-existing genetic defect.

[7] For example, in his deposition taken December 9, 2013, Wayne Jackson asserts that there were no such variations between the first set, second set, and third set fruits.  Transcript of Wayne Jackson Deposition, ECF No. 92-6, at 28.

standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion").

Defendants further argue that Dr. Diaz-Perez should be prevented from testifying because he has not provided an opinion on causation to a reasonable degree of scientific probability. However, as counsel for TRA has argued, this is an exaggeration, and any lack of absolute certainty Dr. Diaz-Perez exhibits at trial will go to the weight of his testimony, not to its admissibility. As Defendants conceded, this case involves complex issues of causation with little to no definitive answers in the research. Thus, even if Dr. Diaz-Perez is unable to pinpoint the exact cause of the seeds in TRA's Melody watermelons, this would not be inconsistent with the relevant literature, and Dr. Diaz-Perez's testimony will still benefit the jury. *See, e.g., Bowers v. Northern Telecom, Inc.*, 905 F.Supp. 1004 (N.D. Fla. 1995) (certifying ergonomics experts to testify to issues of causation "in general" even though experts could not diagnose plaintiffs' specific injuries).[8] In short, having carefully reviewed defense counsel's objections, this Court is not persuaded by counsel's assertion that TRA has failed to meet its burden of proving the second *Hendrix* requirement.

Finally, TRA has met its burden with respect to the third *Hendrix* requirement, relevancy, because causation is likely the central issue in this case. The parties' dispute what may have caused the unexpected seeds in TRA's Melody watermelons, and particularly dispute whether

---

[8] Defendants also argue that Dr. Diaz-Perez's opinions are speculative and fail to rule out alternative causes. This is incorrect. Before developing his opinions in this case, Dr. Diaz-Perez personally visited TRA's watermelon fields, cut open and inspected dozens of watermelons, and took an additional 60 watermelons to the lab for additional testing. He also reviewed the relevant research and conducted additional research to eliminate potential causes, including reviewing monthly weather data from the 2012 watermelon crop season. Throughout this process, Dr. Diaz-Perez refined his opinion to comport with the available data, and even considered potential causes that would have diverted causal responsibility away from the Defendants. For example, Dr. Diaz considered whether temperature was to blame and examined relevant data on that point.

the farmer's husbandry practices, environmental conditions, or some act of the Defendants caused the defect. The jury will be required to resolve that issue. Thus, the issue of causation is relevant and Dr. Diaz-Perez's testimony will assist the jury in that complex determination.[9] Accordingly, Dr. Diaz-Perez's testimony will assist the trier of fact, through application of his expertise, to understand the evidence and to determine a fact in issue, thereby satisfying the final *Hendrix* requirement.

For these reasons,

IT IS ORDERED:

Defendants' *Daubert* Motion, ECF No. 86, is **DENIED**.

**SO ORDERED on April 15, 2014.**

                                                **s/Mark E. Walker**
                                                **United States District Judge**

---

[9] *See Frazier*, 387 F.3d at 1262-63 (discussing this requirement).